UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHIRLEY M. CRITCHLOW,


                            Plaintiff,

                                                         <u>DECISION AND ORDER</u>

                                                         00-CV-6168L


            v.


FIRST UNUM LIFE INSURANCE
COMPANY OF AMERICA,


                            Defendant.
_____

        Plaintiff, Shirley M. Critchlow, commenced this action on April 14, 2000, under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Plaintiff sought

recovery from defendant First UNUM Life Insurance Company of America ("UNUM") for benefits

on an accidental-death-and-dismemberment insurance policy ("the policy") covering her son Daniel

Critchlow, who died engaging in the practice of autoerotic asphyxiation, *i.e.*, the practice of limiting

the flow of oxygen to the brain during masturbation in an effort to intensify sexual pleasure.

        On March 29, 2002, I granted UNUM's motion for summary judgment dismissing the

complaint, and denied plaintiff's cross-motion for summary judgment, on the ground that autoerotic

asphyxiation fell within the policy's exclusion of coverage for losses resulting from intentionally

self-inflicted injuries.  198 F.Supp.2d 318.  On appeal, the Court of Appeals for the Second Circuit,

in a 2-1 decision, affirmed.  340 F.3d 130 (2003).  After that decision was issued, however, one of

the judges on the panel who had voted to affirm reconsidered his earlier decision, and the court

issued a second 2-1 decision, 378 F.3d 246 (2004), vacating its prior decision and reversing the

judgment of this Court.  The Second Circuit remanded the case for entry of judgment in favor of

plaintiff, and accordingly judgment in the amount of $50,000 was entered on September 20, 2004.

On October 27, 2004, the Court of Appeals issued an order on plaintiff's motion before that

court for an award of attorney's fees, prejudgment interest, and costs.  The Court of Appeals' Order

reads as follows in its entirety:

> IT IS HEREBY ORDERED that the motion for attorney's fees, costs
> and interest for the appeal is granted; the amount to be determined by
> the district court.  The district court shall decide in the first instance,
> whether to award fees for the district court phase of the case.  The
> appellate costs shall be determined by this court and will not include
> the $3,375 for expert affidavits submitted in the district court.

Plaintiff now moves in this Court for an award of $42,593 in attorney's fees, prejudgment

interest on the $50,000 judgment, and $3525 in costs.  UNUM opposes the motion on several

grounds.

## DISCUSSION

### I. Court of Appeals' October 27, 2004

A threshold issue here is the import of the Court of Appeals' October 27, 2004 order.

Plaintiff takes the position that, given the Second Circuit's decision to grant plaintiff's motion for

attorney's fees on appeal, it would be inconsistent for this Court to deny plaintiff's motion for

attorney's fees for the district court phase of the case.  Defendant contends that the Court of Appeals left this Court free to award plaintiff no fees at all, even for the appellate phase of the case.

I disagree with both of these positions.  First, plaintiff's position that it would be inconsistent with the Court of Appeals' order for this Court not to award fees for the district court phase of the case is tantamount to saying that the Court of Appeals directed this Court to award fees for the district court phase, which it plainly did not do.  The Second Circut's order expressly left it within the district court's discretion to decide "*whether* to award fees for the district court phase of the case" (emphasis added).  The only reasonable interpretation of that statement is that the district court should decide whether to award *any* fees to plaintiff for the district court phase, and if so, in what amount.

It is equally clear that the Court of Appeals intended plaintiff to receive an award of fees for the appellate phase.  The court stated that plaintiff's motion for attorney's fees, prejudgment interest, and costs for the appeal was "granted; the amount to be determined by the district court."  I take this to mean that the court found that plaintiff was at least entitled to attorney's fees for the appellate phase of the case, leaving it to this Court only to determine the amount of the award.  Although none of the proceedings on appeal were before this Court, nevertheless, the Court of Appeals' decision in my view is clear.  The Court of Appeals decided that plaintiff is entitled to fees and left it to this Court to decide how much.  If this were not the case, the Court of Appeals' statement that plaintiff's motion was "granted" would make no sense.

**II. Fee Award for the Court of Appeals Phase of this Case**

Pursuant to 29 U.S.C. § 1132(g)(1), a court has discretion to award reasonable attorneys' fees "to either party" in an ERISA action.  The decision of whether to award attorneys' fees is ordinarily based on five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).  In considering these factors, the court must be mindful of the Second Circuit's statement that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights ... ."  *Id.* at 872.

As to the appellate phase, the Court of Appeals left it to this Court only to determine the amount of fees that should be awarded.  The *Chambless* factors therefore have no bearing on my analysis of this matter.  The only issue before me is the appropriate size of the award.

Based on the time records submitted by plaintiff's counsel, plaintiff seeks an award for the following hours and rates for work performed on or after May 2, 2002, which is the first entry directly related to the appeal:  66.15 hours at $275 per hour ($18,191.25); 6.8 hours at $225 per hour ($1530); and 0.5 hours at $175 per hour ($87.50), for a total of $19,808.75.

Defendant contends that even if plaintiff is entitled to fees, the fees sought are excessive.  Defendant asserts that plaintiff has failed to establish the reasonableness of the rates requested, and that the hours claimed are either inadequately documented or excessive.

- 4 -

"The lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded" under § 1132(g)(1). *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 487 (2d Cir. 2002) (citing *Chambless*, 885 F.2d at 1057-58). This method "entails two findings: (1) the reasonable hourly rate; and (2) the number of hours reasonably expended." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The time component reflects the hours worked by the lawyer (supported by time records) that are neither excessive nor duplicative, and that do not reflect work done only in connection with unrelated claims on which the party did not succeed." *Id.* (citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

With respect to the hourly rate,

> courts properly have required ... attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984); *see, e.g., A.R. ex rel. R.V. v. New York City Dept. of Educ.*, 407 F.3d 65, 82 (2d Cir. 2005) (noting that plaintiffs had submitted affidavits by special-education lawyers setting forth their hourly fees).

In the case at bar, plaintiff's attorneys, Irving Pheterson and Christopher Calabrese, have submitted an affidavit stating that each of them is "familiar with the charges made by other attorneys in this area of [his] education and experience," and that "the rates charged by [plaintiff's attorneys] are within the range of rates typically charged by such attorneys for similar work rendered by attorneys in this area." Dkt. #34 ¶¶ 11, 12. They have not, however, submitted any other evidence,

such as affidavits of other area attorneys of comparable background and experience, to support these assertions.

In the absence of such other evidence, the Court cannot simply take counsel at their word that the rates requested are the "prevailing market rate[s]." *Blum*, 465 U.S. at 896 n. 11. *See Holmes v. Millcreek Tp. School Dist.*, 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits") (citing *Blum*, 465 U.S. at 895-96 n. 11). The Second Circuit has stated, however, that "a judge may 'rely in part on [his] own knowledge of private firm hourly rates in the community.'" *Association for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) (quoting *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987). While the rates requested do not seem exorbitant, I believe that a modest reduction is warranted, and accordingly will award fees to Pheterson and Calabrese at the hourly rates of $250 and $200 respectively.

As for the number of hours worked, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley*, 461 U.S. at 437 n. 12). Hours that are "excessive, redundant, or otherwise unnecessary," are to be excluded, *Hensley*, 461 U.S. at 434, and "in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch*, 148 F.3d at 173 (citing *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

- 6 -

UNUM contends that plaintiff's counsel have not submitted contemporaneous time records. UNUM says that this is demonstrated by the fact that some individual entries cover work done over a period of several days.  For example, an entry for May 22, 2002 reflects sixteen hours charged to "Research for Brief in 2nd Circuit.  (May 6, 2002 through May 22, 2002)."

Plaintiff's attorneys maintain that the time records are contemporaneous with the work performed.  They state that the reason that some entries are for research done over a period of more than one day is that "the hours for research was [sic] put together as one item of attorney's work before it was added to the computer software program that calculated the attorney's fees.  It represented the accomplishment of a particular piece of research work.  It is still contemporaneous." Plaintiff's Memorandum of Law at 8.

I find that plaintiff's counsel's time records are sufficiently "contemporaneous" to meet plaintiff's burden of showing what work was performed, and when.  *See Brabson v. The Friendship House of Western New York, Inc.*, No. 94-CV-0834, 1997 WL 411915, at *3 (W.D.N.Y. June 30, 1997) (noting that "the strict standard requiring contemporaneous records to sustain a fee request has been recently relaxed in certain limited circumstances" and that "detailed reconstructions of contemporaneously maintained time sheets or of contemporaneously created time records stored in a computer have been deemed to comply with this Circuit's rule") (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160- 1161 (2d Cir. 1994), *aff'd,* 46 Fed. Appx. 14 (2d Cir. 2002); *Citrin v. Erikson*, 918 F.Supp. 792, 805 (S.D.N.Y. 1996)).  The entries for multiple dates do not cover long periods of time, nor do they appear to have been made long after the work had been performed.

I do believe, however, that the total number of hours compensated should be reduced.  There is an entry, for example, charging fourteen hours (at $275 an hour) for travel time to and from New York City to argue the appeal before the Second Circuit.[1]  Assuming that counsel traveled by air, that seems excessive.  In addition, thirty-seven hours are charged to researching and writing plaintiff's appellate brief.  While it is certainly important to write an effective, accurate brief on appeal, presumably counsel had already done substantial research on the relevant issues at the district court level.  Considering the relative dearth of cases involving insurance claims arising from death from autoerotic asphyxiation, one may also presume that counsel did not have to sift through a plethora of cases decided in the period between the issuance of my summary judgment decision and oral argument before the Court of Appeals.[2]

Since the vast majority of the work performed was done by Pheterson–66.15 hours, as opposed to 7.3 hours by Calabrese–I will reduce Pheterson's time by fifteen percent, to 56.25 hours.  I will not reduce Calabrese's hours.  Plaintiff is therefore awarded $14,056.88 for Pheterson's work during the appellate phase of the case, and $1447.50 for Calabrese's work, for a total award of $15,504.38.[3]

---

[1]I also note that in this circuit, travel time is generally compensated at half the usual hourly rate.  *See, e.g.*, *Connecticut State Dep't of Social Services v. Thompson*, 289 F.Supp.2d. 198, 209 (D.Conn. 2003); *McMahon v. Novello*, 192 F.Supp.2d 54, 70 (W.D.N.Y. 2001); *see also Patterson v. Julian*, 250 F.Supp.2d 36, 45 (N.D.N.Y. 2003) ("Travel time is generally reimbursed at half the hourly prevailing rate") *rev'd in part on other grounds*, 370 F.3d 322 (2d Cir. 2004).

[2]A Westlaw search for the term "autoerotic asphyxiation" yields two federal cases and one state case decided during that period.

[3]For reasons that are not apparent, one of Calabrese's entries, for May 15, 2002, charges
(continued...)

**III. Whether Any Fees Should Be Awarded for the District Court Phase of this Case**

The Court of Appeals directed this Court determine *whether* fees should be awarded for the "district court phase of the case."  An award of fees is not mandatory and the Second Circuit has directed courts to consider the five factors discussed in *Chambless* in determining whether to award fees.  Although the Court of Appeals has apparently made a determination to award fees for the appellate phase, that does not relieve this Court of its independent obligation to analyze the *Chambless* factors and make the appropriate decision with respect to the district court phase of the case.  If the Court of Appeals wanted to direct that I award fees, it could have done so.  Applying the *Chambless* factors to the case at bar, I find that a fee award is not warranted for the work performed in this Court, prior to plaintiff's appeal of my summary judgment decision.  Even construing § 1132(g)(1) liberally, I am unable to conclude that the *Chambless* factors militate in favor of an award of attorney's fees under the factual circumstances of this case.

First, I do not believe that UNUM acted culpably or in bad faith.  At the time that UNUM denied benefits on July 7, 1999, the law was unsettled as to whether autoerotic asphyxiation fell within the type of exclusion at issue here.  As explained in my prior decision in this case, 198 F.Supp.2d at 326, as of that date two reported decisions, neither of which was controlling in this circuit, "directly support[ed] the view that autoerotic asphyxiation does not necessarily constitute an injury": *Connecticut Gen'l Life Ins. Co. v. Tommie*, 619 S.W.2d 199 (Tex.Civ.App. 1981), from

---

[3](...continued)
half an hour at the rate of $175 per hour, which the Court accepts.  The rest of Calabrese's time will be compensated at the rate of $200 per hour.

an intermediate Texas appellate court, and *American Bankers Ins. Co. of Florida v. Gilberts*, 181 F.3d 931 (8th Cir. 1999), which was issued about a month before UNUM's denial of benefits.

There were also two reported cases supporting UNUM's view, however:   *Sims v. Monumental Gen'l Ins. Co.*, 960 F.2d 478 (5th Cir. 1992) (holding that death from autoerotic asphyxiation was the result of an "intentionally self-inflicted injury," and therefore not covered by an insurance policy that excluded such injuries); *Sigler v. Mutual Benefit Life Ins. Co.*, 506 F.Supp. 542 (S.D.Iowa) (concluding that the decedent's acts during autoerotic asphyxiation resulted in intentional injury, and that recovery was barred by an exclusion for "intentionally, self-inflicted injury of any kind"), *aff'd*, 663 F.2d 49 (8th Cir. 1981) (per curiam).   In addition, in an unreported decision (a copy of which was submitted by UNUM on the summary judgment motions in this action), *Lonergan v. Reliance Std. Life Ins. Co.*, No. CV-96-11832-PBS (D.Mass. May 29, 1997), the court held that death from autoerotic asphyxiation was excluded from coverage under an intentionally self-inflicted injury clause.  *See also Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1128 (9th Cir.) (noting that "[c]ourts addressing the exclusion for 'intentionally self-inflicted injury' in cases of death during autoerotic asphyxiation have reached conflicting conclusions"), *cert. denied,* 537 U.S. 1067 (2002).

In view of the then-unsettled state of the law concerning this issue, I see no bad faith on UNUM's part in denying plaintiff's claim for benefits.  UNUM did not flout well-established case law, but rather took a position that found some support among the relatively sparse case law on the subject.  That is not indicative of bad faith.  *See, e.g., Davis v. Mid-Century Ins. Co.*, 311 F.3d 1250, 1252 (10th Cir. 2002) ("[f]or bad faith liability to attach, the law at the time of the alleged bad faith

must be settled") (applying Oklahoma law); *TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1496

(10th Cir. 1995) (affirming summary judgment in favor of insurer on bad-faith claim because law was

unsettled, and authority from other jurisdictions supported insurer's position) (applying Colorado

law); *New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.*,

92 F.3d 127, 130, 135 (2d Cir. 1996) (affirming district court's denial of attorney's fees and costs

under ERISA, where district court noted that "there is no evidence that defendants [acted] in bad

faith," and that "[t]he law in this area was unsettled"); *Morgan v. Wal-Mart Associates' Health and

Welfare Plan*, 214 F.Supp.2d 1047, 1052 (D.Ariz. 2002) ("While Defendant has been tenacious in

its attempts to recover the benefits that it paid Morgan, the Court does not believe that Defendant

has acted in bad faith.  In particular, the Court has previously noted that prior to [the issuance of a

certain Supreme Court case in 2002] the circuit courts were split on whether or not ERISA plans

could recover in similar circumstances").

     Nor do I find that UNUM was "culpable."  As one district court from within this circuit has

explained,

> A party is only culpable when its conduct is intentional, blameworthy, and results in the
> breach of a legal duty.  Although this Circuit has not always required a showing of malice
> or bad faith, a plaintiff must show something more than an ERISA plan administrator's
> determination that benefits are not to be allowed in a particular case.  Additionally, this factor
> requires "conduct [that] normally involves something more than simple negligence ... .  [It]
> implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves
> malice or a guilty purpose."

*Perreca v. Gluck*, No. 99 Civ. 1779, 2004 WL 2793270, at *3 (S.D.N.Y. Dec. 6, 2004) (quoting

*McPherson v. Employees' Pension Plan of American Re-Insurance Co.*, 33 F.3d 253, 256-57 (3d Cir.

1994)) (other quotes omitted).

In *Locher v. UNUM Life Ins. Co. of America*, 389 F.3d 288 (2d Cir. 2004), for example, the Court of Appeals held that the district court did not abuse its discretion in finding that, although the defendant insurer did not act in bad faith in denying a claim for disability benefits, it was nevertheless culpable because its principal medical reviewer had rejected medical conclusions without properly following up with the evaluators, seeking independent evaluations from persons with comparable qualifications, or examining the plaintiff himself when troubled by the perceived inconsistencies between the medical office files and documents submitted in support of the benefit application.   In addition, the trial evidence showed that the reviewer's rejection of the plaintiff's proffered medical evaluations was based in significant part on his general assumptions as to human behavior, rather than on scientific analysis of medical evidence.  *Id.* at 298-99; *see also Priority Solutions, Inc. v. Cigna and Price Waterhouse Health Plan*, No. 98 CIV. 4336, 1999 WL 1057202, at \*4 (S.D.N.Y. Nov. 8, 1999) ("regardless of whether [insurer] acted in bad faith, it was culpable," because it "violated the plain meaning of the plan").  The findings of "culpability" in these cases, then, rested on more than a mere denial of benefits that was later found to be wrongful.

Again, I do not find any culpability here under these standards.  Considering the unsettled state of the law at the time, the fact that two of the four federal judges involved in this case have construed the policy as excluding benefits on the facts of this case, and that the Court of Appeals for the Second Circuit was itself clearly divided on the issue–ruling first for, then against UNUM–it appears that, at least prior to the Second Circuit's most recent decision in this case, reasonable minds could have differed as to whether benefits should have been awarded to plaintiff.  It can hardly be said that UNUM violated the policy's plain meaning in denying benefits.

- 12 -

Perhaps aware of this legal landscape, plaintiff focuses her claim of bad faith on the fact that all of the members of UNUM's appeals committee were also employees of UNUM Provident Corporation, which owns UNUM through a holding company.  Plaintiff contends that this created an "improper conflict of interest" in that UNUM "pack[ed] the Appeals Committee only with persons who had a clear motive to rubber stamp" UNUM's decisions regarding benefits.  Plaintiff's Memorandum of Law (Dkt. #34) at 3.

I disagree that this shows bad faith on UNUM's part.  The Second Circuit has held that the fact that an insurer's appeals committee that reviewed a plaintiff's claim was composed entirely of the insurer's own employees is a factor that might tend to show that the committee members were operating under a conflict of interest, *DeFelice v. American International Life Assurance Company of New York*, 112 F.3d 61, 65-66 (2d Cir. 1997), but plaintiff has submitted no authority that such a situation establishes bad faith as well.  The Second Circuit has held only that such a conflict is one factor that can be considered in determining the appropriate standard of review and whether a district court can consider materials outside the administrative record, *id.*, and it has "declined to issue a broad ruling" in that regard.  *Locher*, 389 F.3d at 293 (noting that in *DeFelice*, the court held that the district court could consider materials outside the administrative record not only because the appeals committee that reviewed plaintiff's claim was made up entirely of employees of the administrator, but also because "there existed no established criteria for determining an appeal, and that the committee apparently had a practice of destroying or discarding all records within minutes after hearing an appeal").  *Id.* at 293 (citing *DeFelice*, 112 F.3d at 66).  In short, plaintiff has shown no bad faith or culpability on UNUM's part.

- 13 -

As to the second *Chambless* factor, I find that UNUM would be able to satisfy the award sought here. The third factor–whether an award of fees would deter other persons from acting similarly under like circumstances–is essentially neutral, since "the likely deterrent effect of the [Second Circuit's] merits decision itself would not be enhanced by a fee award." *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 211 (2d Cir. 2003).

In light of the Court of Appeals' decision in this case finding that plaintiff was entitled to benefits, the fourth factor–the relative merits of the parties' positions–weighs in plaintiff's favor. Again, however, the fact that UNUM initially prevailed both in this Court and before the Second Circuit indicates that there was not a gross disparity between the merits of plaintiff's position and that of UNUM. The matter was a close one.

Finally, plaintiff concedes that the fifth *Chambless* factor–whether the action conferred a common benefit on a group of pension plan participants–is inapplicable in the context of an accidental death policy. *See* Plaintiff's Memorandum of Law at 6. In addition, given the apparent–and fortunate–rarity of fatalities from the practice of autoerotic asphyxiation, *see Critchlow*, 378 F.3d at 258 (noting that data from the United States, England, Australia, and Canada indicate that one to two autoerotic asphyxiation-caused deaths per million population are detected and reported each year), presumably few people stand to benefit from the Court of Appeals' decision.

Based on these findings, I conclude that plaintiff is not entitled to an award of attorney's fees. As the district court put it in *Leyda*:

> No factor weighs heavily in favor of awarding attorney's fees to the plaintiff. The court must decide whether ability to pay and a minimal common benefit justify awarding attorney's fees to a prevailing plaintiff in a case where the defendant's actions were not unreasonable and where the resolution of the case was close. The court notes that the close nature of the case,

which affected several factors, dominates the analysis and justifies weighing the balance of
factors to deny fees.

322 F.3d at 210 (quoting district court decision).  The court of appeals in *Leyda*

conclude[d] that where the court has permissibly found that the defendant ... did not act in
bad faith, that the case was close on the merits, that the common benefit was minimal, and
that there was no reason to infer that an award of fees would have any greater deterrent effect
than that resulting from the imposition of liability, the district court's decision not to award
attorney's fees to the prevailing plaintiff is not an abuse of discretion.

*Id.* at 211; *see also Salovaara v. Eckert*, 222 F.3d 19, 32 (2d Cir. 2000) (district court did not abuse

discretion in denying motion for attorney's fees where only defendant's ability to pay supported

award).

Little more than that need be said here.  The only factors weighing in favor of an award are

UNUM's ability to pay (which generally will tilt in plaintiffs' favor in all cases against large

insurance companies) and the relative merits of the parties' positions, although as noted this case was

close on the merits.  In the absence of bad faith or culpability on the part of UNUM, the minimal

deterrent effect that a fee award would have, and the absence of a common benefit, I conclude that

no award of fees is warranted for the district court phase of the case.


## IV. Prejudgment Interest

The Court of Appeals also granted plaintiff's motion for prejudgment interest.  Although

UNUM argues that plaintiff is not entitled to prejudgment interest, I believe that the Second Circuit's

order is dispositive of the matter.

At any rate, even if were left to my discretion, I would award prejudgment interest in this

case.  Whether or not to award prejudgment interest in a suit to recover benefits under ERISA is

ordinarily left to the discretion of the district court. *Jones v. UNUM Life Ins. Co. of America*, 223

F.3d 130, 139 (2d Cir. 2000). In exercising such discretion, the court should consider: "(i) the need

to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness

and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv)

such other general principles as are deemed relevant by the court." *SEC v. First Jersey Securities,*

*Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (internal quotation marks omitted), *cert. denied*, 522 U.S.

812 (1997).

Weighing those factors here, I find that an award of prejudgment interest is warranted. It has

now been six years since UNUM denied plaintiff's claim for benefits. She has therefore not had the

use of that money throughout that time. Considering the remedial purpose of ERISA, the balance

of the equities, and the need to make plaintiff whole, I find that plaintiff is entitled to prejudgment

interest. *See Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 875 (S.D.N.Y. 1994) ("In

view of the long delay in plaintiffs' receipt of benefits that have now been determined to have been

due in 1988, such an award is particularly appropriate as a means of ensuring that plaintiffs are made

whole and that defendants do not profit by their failure to comply with their ERISA obligations.

These concerns are, by themselves, sufficient to justify the award"), *aff'd*, 60 F.3d 956 (2d Cir.

1995).

The next question is the appropriate rate of interest. "Since prejudgment interest is 'an

element of [the plaintiff's] complete compensation,' the same considerations that inform the court's

decision whether or not to award interest at all should inform the court's choice of interest rate."

*Jones*, 223 F.3d at 139. *See Mendez v. Teachers Insurance & Annuity Ass'n*, 982 F.2d 783, 790 (2d

Cir. 1992) (amount should be "fair, equitable and necessary to compensate the wronged party fully") (internal quotation marks omitted); *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 875, 899 (S.D.N.Y. 1994) ("the aim ... is to make the plaintiffs whole, but not to give them a windfall").

There is no federal statute that controls the rate of prejudgment interest. While some courts have awarded prejudgment interest at the postjudgment interest rate provided by 28 U.S.C. § 1961, *see*, *e.g.*, *Real Estate Investors Ass'n v. City of Jamestown*, No. 00-CV-815, 2005 WL 602377 (W.D.N.Y. Mar. 8, 2005); *Tuszynski v. Innovative Services, Inc.*, No. 01-CV-6302, 2005 WL 221234 (W.D.N.Y. Jan. 29, 2005), *Connor v. Ulrich*, 153 F.Supp.2d 199, 205 (E.D.N.Y. 2001), the Second Circuit has stated that "[t]he suitability of that postjudgment rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government." *Jones*, 223 F.3d at 139.

In *Jones*, which was also an ERISA case, the district court had granted prejudgment interest using the § 1961 postjudgment interest rate, but stated no reasons for doing so. The Second Circuit held that in the absence of any reasoning provided by the lower court, "meaningful review is forestalled," and remanded the case with directions to the district court to "briefly explain its reason for adopting the § 1961 rate or any higher rate." *Id.* at 140.

On remand, the district court adhered to the § 1961 rate, stating that it did so because of the closeness of the case, because "it was the most fair and equitable rate available," and because "the evidence [Jones] offered to prove why a higher rate of interest was justified, was unpersuasive." 14

Fed.Appx. 44 (2d Cir. 2001) (quoting district court's decision).  On appeal, the Second Circuit

affirmed.  The court stated,

> Although we do not see that the rate of prejudgment interest should be determined by the closeness of the case, we see no error or abuse of discretion in the court's assessment of the persuasiveness of Jones's evidence to support a higher rate than that set out in § 1961.  The record indicates that Jones's original proffers were of a general nature and that she made no attempt on remand to supplement her proof that a higher interest rate was necessary in order to compensate her fully.  We cannot conclude on this record that the court's use of the § 1961 rate was an abuse of discretion.

*Id.* at 46.

In the case at bar, plaintiff has not requested the Court to adopt any particular interest rate,

but has asked only for "a rate of interest this Court deems appropriate."  Plaintiff's Motion (Dkt.

#34) at 2.  I therefore see no basis for applying a rate other than the postjudgment interest rate as

provided in § 1961.

Section 1961 provides that postjudgment "interest shall be calculated from the date of the

entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield,

as published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment."  A review of those weekly averages on the Federal Reserve's

website (http://www.federalreserve.gov/releases/h15/data/m/tcm1y.txt) reveals that in the period

since UNUM denied plaintiff's claim, those rates have fluctuated from over 6% to close to 1%.  In

exercising the Court's discretion, I will award plaintiff prejudgment interest at the rate of 3.25%,

which is roughly the average of the § 1961 rate over the period in question.[4]

---

[4]UNUM contends that if the Court does award prejudgment interest, it should do so only from the date of the Court of Appeals' decision in favor of plaintiff.  That makes no sense.  Such an award would be more akin to an award of *post*judgment interest.  If plaintiff is to be made

(continued...)

**V. Plaintiff's Bill of Costs**

UNUM also objects to several items in plaintiff's bill of costs.  Pursuant to Local Rule 54, however, "a party entitled to recover costs shall submit to the *Clerk*, upon forms provided by the Clerk, a verified bill of costs" within thirty days after entry of final judgment.  (Emphasis added.) It is for the Clerk of the Court in the first instance, then, to determine the amount of taxable costs.

Here, plaintiff's motion, which was filed within thirty days after judgment was entered in her favor, includes a request for costs, and her bill of costs is attached to the motion.  Under Local Rule 54, plaintiff should have submitted her bill of costs to the Clerk.  Since the bill of costs was otherwise timely, I will, pursuant to Fed. R. Civ. P. 6(b), give plaintiff fifteen days from the date of entry of this Decision and Order to submit a bill of costs to the Clerk in compliance with Local Rule 54.[5]

---

[4](...continued)
whole for the damage she suffered as a result of UNUM's wrongful denial of her benefit, prejudgment interest should be calculated from the date of UNUM's denial of her claim.

[5]It does appear that one of plaintiff's claimed costs, for expert witness fees, are not taxable as costs.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary").  *See also* 28 U.S.C. § 1821(b) (witnesses shall be paid $40 per day); *Agredano v. Mutual of Omaha Co.*, 75 F.3d 541, 544 (9th Cir. 1996) (expert witness fees are not recoverable in ERISA cases except to the extent authorized by § 1821 and § 1920, which deals with compensation of court-appointed experts); *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 137 F.Supp.2d 351, 360 (S.D.N.Y. 2001) (same), *aff'd in part, rev'd on other grounds in part*, 302 F.3d 18 (2d Cir. 2002).  I leave it to the Clerk of the Court to decide that matter, and defendant's other objections to plaintiff's bill of costs, in the first instance, however.

**CONCLUSION**

Plaintiff's motion for an award of attorney's fees (Dkt. #34) is granted in part and denied in part.  Pursuant to the October 27, 2004 order of the Court of Appeals for the Second Circuit, plaintiff is awarded fees in the amount of $15,504.38 for work performed during the appellate phase of this case, together with prejudgment interest at an annual rate of 3.25%, calculated from July 7, 1999. In all other respects, plaintiff's motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 14, 2005.

.